Continental Jewelry Co. *v.* D. T. Braddock.

[60 South. 212.]

Sales. *Rescission by buyer.* *Estoppel or waiver.*

Where a party bought a lot of jewelry and in consideration of such purchase was to receive a show case from the seller free of charge, and the jewelry was shipped to him and arrived on time but the showcase, which was also shipped, by mistake went to a nearby town which fact was known to the buyer, but concealed by him when he notified the seller that the showcase had not arrived. In such case the buyer was estopped from setting up the nondelivery of the showcase in bar of a suit by the seller for the price of the jewelry.

Appeal from the circuit court of Tippah county.
Hon. H. K. Mahon, Judge.
Suit by the Continental Jewelry Company against D. T. Braddock.

From a judgment for defendant, plaintiff appeals. The facts are fully stated in the opinion of the court.

*Spight & Street*, for appellants.

The seventh instruction asked by appellant and refused ought to have been given. It summarizes the facts as shown by the evidence and declares that it is the duty of the defendant to notify the plaintiff that the show case would not be accepted at Ripley. The appellee will not be allowed to take advantage of his attempted rescission of the contract on the naked ground that the strict letter of the contract had not been complied with when it was in his power to remedy the trouble and when he knew that the appellant was anxious to carry out his contract.

"It is a well-settled principle that he who prevents the performance of the contract cannot avail himself of its nonperformance." *Wellman* v. *Jones*, 124 Ala. 580, 27 So. 416.

It is perfectly apparent from the whole course of appellee that he was seeking to get advantage of appellant and that he knew that appellant was acting in perfect good faith towards him in trying to deliver the show case in strict accordance with the terms of his contract. Both these facts are shown by the correspondence between the parties.

This instruction involves the question of the right of defendant to rescind the contract, and if he had no such right under the facts of the case, then he had no right to recover a judgment against the appellant, and the verdict of the jury was wrong and the court below should have sustained the motion for a new trial and set the verdict aside. In the case of *McAlister-Coman Co.* v. *Matthews*, 167 Ala. 361, 52 So. 416, we have a case almost parallel to the one at bar, and for a full statement we refer to the case between the same parties reported in 150 Ala. 173, 43 So. 747. In 167 Ala. *supra*, the court in passing upon the right of the defendant to rescind the contract uses this strong and expressive language:

"A contract is made by the joint will of two parties and can only be resigned by the joint will of the two parties; but one party may so wrongfully repudiate the contract as to authorize the other to renounce it, and to refuse to be longer bound thereby. This happens when the acts and conduct of one of the parties evinces an intention to no longer be bound by the contract. Merely because a given act or course of conduct of one party to a contract is inconsistent with the contract is not sufficient; it must be inconsistent with the intention to be longer bound by it. Every breach of a contract is, of course, inconsistent with the contract; but every breach by one party does not authorize the other to renounce it *in toto.*"

If the above authority announces correct principles of law, then it is conclusive of this whole case. The appellant did not "wrongfully repudiate the contract so as to authorize the other to renounce it and refuse to be longer bound thereby," neither did the appellant, "evince an intention to no longer be bound by the contract." On the contrary, as shown by the whole evidence, the appellant in good faith tried to carry out the contract and his failure to do so was the result of the fraudulent conduct of the appellee in withholding from appellant information which would have easily and speedily enabled the appellant to deliver the show case at the prescribed freight depot of the appellee. It cannot be disputed, judging from the correspondence between the parties, that if appellee had only informed the appellant that the show case was at Ripley, it would have at once been delivered at Falkner. It is shown by all the testimony of the appellee himself and that of Mr. Shannon, the depot agent at Ripley, that appellee had this information before he attempted to rescind the contract by returning the goods. It is also shown by the correspondence between the parties that it was the intention of appellant to start a tracer for the show case which would have inevitably resulted in its delivery at Falkner. Appellee was evidently afraid of this result and therefore he, not only withheld from

appellant the information in his possession, but he hurried to send the goods back before appellant had time to start the tracer and locate the shipment. It must be borne in mind that this bill of goods was dated April 1st, and on the third of April the jewelry was delivered to the express agent at Falkner for return to appellant, and this, too, when the appellee knew that the show case was at Ripley only a few miles from his place of business, and yet not one word did he communicate to appellant which would have enabled him to rectify the mistake in the shipment. In the case cited above, 167 Ala. 361, the court in passing upon a plea that "when the plaintiff shipped the defendant this jewelry, it failed to furnish said show case," the court said, "This, without more, is not sufficient to authorize a repudiation. No actual fraud, whatever is alleged." In the case at bar there is no pretense of fraud with the delivery, or failure to deliver the show case in question. On the contrary, there is abundant evidence, not only of the intention, but of the desire of the appellant to deliver the show case as speedily as possible. It is manifest from the whole case that instead of any fraud or purpose to hinder the prompt delivery of the show case, its shipment to Ripley instead of Falkner was the result of an innocent and unconscious mistake, by either "the plaintiff, the factory, or the railroad company" as stated in the instruction under consideration. That the show case was promptly delivered at Ripley, and appellee notified on the 28th day of March is beyond controversy, and it is also manifest that this mistake did not unreasonably delay the appellee, nor was there any possible benefit or advantage which could accrue to appellant by this mistake. It is shown by the letter of appellant of March the 19th that the bill of lading was then enclosed to appellee; that it was received is not denied. It must have been delivered through the regular course of the mails in two or three days from its date, and inspection of this bill of lading advised the appellee that a mistake had been made in sending the show case to Ripley instead of to

Falkner. If appellee had been disposed to act in good faith he would have notified the appellant at once of the mistake in the shipment, but this he admits he never did. even after he was informed that the show case was at Ripley.

This Alabama case from which we have quoted goes further and says, "A mere failure to deliver the show case the very moment, day or hour the jewelry was delivered is not of itself sufficient to warrant a rescission in the absence of a provision of stipulation to that effect. It does not appear that there was any refusal to deliver."

There was no provision in the contract requiring the show case to be delivered at the same time the jewelry was delivered, but it is shown that it was not contemplated that it should be delivered at the same time, because the contract provided that the jewelry should be shipped by express from the place of business of appellant in Cleveland, Ohio, and the show case to be shipped by freight from the factory. Both shipments to be made at the earliest convenience of appellant. The record shows that the show case was shipped from Detroit, Michigan, on the 15th of March, on the order of appellant of March 9th, and received at Ripley on March 28th, the greatest delay being on the part of the railroad company from the time the show case was billed out and the time it reached Ripley, for which appellant was not to blame.

Even a casual inspection of the record must convince the court that the appellant acted in the utmost good faith throughout the entire transaction. The same cannot be said in reference to the conduct of the appellee.

*Thos. E. Pegram*, for appellee.

Conceding, for the sake of argument only that there was an unwarranted breach and rescission on the part of appellee, Braddock, appellant, plaintiff below, should not be permitted to recover in this case. Under the law, as laid down by this court in *Cotton Company* v. *Herring*, 84 Miss. 693, on a breach or rescission by the buyer of per-

sonal property, the seller has one of three remedies: (a) Complete the contract on his part, and sue for the contract price; or, (b) treat the contract as ended, retain the property as his own, and sue for the difference between the market price and the contract price; or (c) sell the property at private or public sale for the best price he can obtain, and sue for the difference between the price realized and the contract price. The appellant complied with neither of these conditions. The seventh instruction asked for by the defendant, and refused by the trial court, should have been given. This instruction would have told the jury that if the plaintiff had not performed at least one of the above conditions it was their duty to find for the defendant. It is, perhaps true that this would have been tantamount to a peremptory instruction for the defendant, but it should have been given.

"The general and just rule for measuring the damages arising from the breach of contract for the sale of personal property is the difference between its market value at the time and place of delivery and its contract price; because the vendor is presumed to have the property at hand; and his profit if the contract is performed, or his loss if it is broken, is the exact difference between the price he can sell the property for in the market and the price he is entitled to receive for it under the contract." Notes to *Gardner* v. *Deeds*, 7 Am. & Eng. Ann. Cas. 1175; 24 Am. & Eng. Ency. of Law (2 Ed.), 1114; 35 Cyc. 584.

There being only a partial delivery, under the contract, the seller could not maintain an action for the price or value of the goods. 35 Cyc. 531; *Railroad Co.* v. *Presley*, 45 Miss. 66; *Scott* v. *Wood*, 41 Miss. 661. However, whether this be an action for price or value, or whether it be for damages the case of *Cotton Co.* v. *Herring*, *supra*, applies.

Whether there was sufficient performance on the part of appellant to entitle it to recover was a question of fact, and for the jury to settle. 35 Cyc. p. 600, and footnotes; *Moreland* v. *Cotton Co.*, 94 Miss. 572. I submit

that there was not sufficient delivery. The show case was, essentially, for the purpose of affording the appellee facilities for displaying the goods, as well as being a substantial and material part of the consideration. The show case was never delivered to the common carrier, consigned to Falkner, hence there was no delivery to Braddock. Under a contract of sale, which provides for delivery at a specified place, a delivery at such place must be made to fix the liability of the buyer, and it is not sufficient that the goods are ready for delivery at another place near-by. 35 Cyc. 171; *Green* v. *Grug Co.*, 167 Ala. 372, 52 So. 433.

COOK, J., delivered the opinion of the court.

The facts gathered from the record are about these: Appellee, a country merchant, bought from the traveling salesman of appellant a lot of jewelry at an agreed price, and in consideration of this purchase of jewelry appellant agreed to ship appellee a show case described in the contract. The jewelry was delivered, but from some error in the shipping orders the show case was shipped to Ripley, instead of Falkner, the shipping point of appellee. Appellee notified appellant of the receipt of the jewelry and of the nondelivery of the show case. Appellant in reply expressed regret at the miscarriage of the show case, and promised to trace it and have it delivered. In the meantime appellee learned that the show case had been shipped to Ripley, which place was a short distance from Falkner; but, having decided to rescind his contract, he concealed this knowledge, or rather failed to disclose the fact, in his correspondence. While appellant was attempting to locate the show case, appellee hauled the jewelry to the railroad and shipped it back to appellant.

There was no claim that appellee did not get what he bought, except the show case; but the jewelry was not opened until the railroad agent refused to receive same, unless the boxes were opened for his inspection. There is no evidence that the jewelry failed to come up to rep-

resentations. We think good faith required appellee to notify appellant that the show case was at Ripley, and thus give appellant the opportunity to promptly deliver the show case at Falkner, and that he cannot take advantage of his knowledge of the facts, and thus defeat his contract, because his silence prevented appellant from repairing the mistake and fully performing its part of the contract. Indeed, there is nothing in the record which warranted the jury in finding that appellee was not liable for the value of the jewelry purchased by him, and we can see no reason, from the facts of this case, why he should have been permitted to escape liability because of the shipment of the show case to Ripley, instead of Falkner.

*Reversed and remanded.*